IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-00406-01-CR-W-DW |
| | ) | |
| WILLIX J. WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Willix J. Walker's Motion to Suppress (doc #18). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On November 1, 2005, the Grand Jury returned a one count indictment against Willix J. Walker. The indictment charges that on October 31, 2005, defendant Walker, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition which had been transported in interstate commerce.

On January 31, 2006, the undersigned conducted an evidentiary hearing on the motion to suppress. Defendant Walker was represented by David A. Kelly. The Government was represented by Assistant United States Attorney Christina Tabor. The Government called Officer Mark Catron of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FACTS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On October 31, 2005, at 9:52 p.m., Officers Mark Catron and John Newell were on routine patrol in the area of Gregory and Prospect. (Tr. at 3-4) The officers observed a vehicle turn at the intersection of Gregory and Prospect and at that time accelerate to the point that the tires squealed. (Tr. at 4) Officer Catron testified that there is a city ordinance against a display of speed. (Tr. at 4) The officers then observed the vehicle pass another vehicle in the lanes of oncoming traffic. (Tr. at 4)

2. The officers activated the lights and siren of their patrol vehicle in an attempt to effect a traffic stop. (Tr. at 4-5) The driver acted like he was going to pull over, but then he accelerated and refused to stop. (Tr. at 5) The officers decided it was too much of a traffic hazard to continue a pursuit. (Tr. at 6) A police helicopter happened to be overhead and followed the vehicle. (Tr. at 6) The helicopter officer notified Officers Catron and Newell by radio that he observed a passenger from the vehicle exit the vehicle[1] and begin to run westbound through the houses in the middle of the block between 68th and 69th of Walrond. (Tr. at 6-7) The helicopter officer described the passenger that he observed fleeing from the car as a black male wearing a dark-colored coat and light-colored pants. (Tr. at 6-7)

3. Officers Catron and Newell moved into the area, attempting to locate the passenger. (Tr. at 6-7) Officer Catron observed a suspect matching the description that the helicopter officer had given running between houses. (Tr. at 7-8) Officer Catron testified that, in his mind, there was no question that the suspect he observed running was the passenger from the vehicle. (Tr. at 24) Not more than a minute or two had passed between the time the helicopter officer notified Officers Catron and Newell that the passenger had fled from the car and the time the officers observed a person matching the description given by the helicopter officer. (Tr. at 7) Officer Newell parked the patrol vehicle and Officer Catron exited the vehicle and ordered the suspect to stop. (Tr. at 8) The suspect fled. (Tr. at 8) Officer Catron gave foot pursuit between houses and over a fence. (Tr. at 9) Officer Catron continuously gave the suspect verbal orders to stop, but the suspect would not stop. (Tr. at 9) Officer Catron observed the suspect reach into his waistband and pull out a handgun. (Tr. at 9) Officer Catron then observed the suspect drop his shoulder and then drop to the ground the handgun at the southwest corner of 6809 South Benton. (Tr. at 9) Officer Catron continued his pursuit and as he rounded the corner, he observed that

---

[1] The vehicle then took off northbound at a high rate of speed. (Tr. at 18) The driver of the vehicle was not apprehended. (Tr. at 19)

another officer had stopped the suspect at gunpoint. (Tr. at 9-10)

4. Officer Catron returned to the location where he had seen the suspect drop the handgun. (Tr. at 10-11) A loaded handgun was found right next to the corner of the house. (Tr. at 11) Thirty-three rounds were in the magazine and there was one round in the chamber. (Tr. at 12)

5. Upon searching the suspect incident to arrest, a box containing fifty rounds of .9 mm ammunition was found in the suspect's right coat pocket. (Tr. at 12) A sock containing thirty-two additional rounds of .9 mm ammunition was also found in the suspect's right coat pocket. (Tr. at 12) Black sunglasses and a black neoprene ski mask were recovered from the suspect's left coat pocket. (Tr. at 13-14)

6. Officer Catron attempted to identify the suspect at the scene. (Tr. at 15) Officer Catron asked the suspect his name, but the suspect would only reply, "I'm a felon, I'm a felon." (Tr. at 16) The suspect refused to give his name, date of birth, social security number or address. (Tr. at 16) After the suspect was taken to police headquarters, he was fingerprinted and then identified as Willix Walker. (Tr. at 15-17)

7. Defendant Walker was given a general ordinance summons for hindering an investigation. (Tr. at 17)

## III. DISCUSSION

Defendant Walker seeks to suppress the following: (a) 1 Box of 9mm bullets (Norinco); (b) 1 sock of 9mm bullets (Luger-Wolf); (c) 1 Black neoprene face mask; and (d) 1 semi-automatic pistol. (Motion to Suppress at 2) Defendant argues that the police officers were without reasonable suspicion to initiate a stop of him. (Suggestions in Support of Motion to Suppress at 2) Defendant further argues that the police in the helicopter could not have provided a sufficient description to warrant the officers on the ground to stop him. (Id. at 4)

Both investigative stops and arrests are seizures. However, an investigative stop need only be supported by a reasonable, articulable suspicion that criminal activity may be afoot, whereas an arrest must be supported by probable cause. See Terry v. Ohio, 392 U.S. 1, 25-31 (1968); United States v. Raino, 980 F.2d 1148, 1149 (8th Cir. 1992), cert. denied, 507 U.S. 1011 (1993); United

3

States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992); United States v. Jones, 759 F.2d 633, 636 (8th Cir.), cert. denied, 474 U.S. 837 (1985). "A dual inquiry determines the reasonableness of an investigative stop: 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Doffin, 791 F.2d 118, 120 (8th Cir.), cert. denied, 479 U.S. 861 (1986)(quoting Terry v. Ohio, 392 U.S. 1, 19-20 (1968)).

The record in this case establishes that defendant Walker was a passenger in a vehicle that was fleeing from police. (See Fact No. 2, supra) Defendant Walker exited the vehicle and ran between houses. (Id.) A helicopter officer gave the officers on the ground a description of the passenger that he observed fleeing from the car. (Id.) Within a minute or two, Officer Catron observed a suspect matching the description running between houses. (See Fact No. 3, supra) Officer Catron exited the police vehicle and ordered the suspect to stop. (Id.) The suspect fled and Officer Catron pursued the suspect on foot. (Id.) Officer Catron continuously gave the suspect verbal orders to stop, but the suspect would not stop. (Id.) Officer Catron observed the suspect reach into his waistband and pull out a handgun. (Id.) Officer Catron then observed the suspect drop his shoulder and then drop to the ground the handgun at the southwest corner of 6809 South Benton. (Id.) After the suspect was apprehended, Officer Catron returned to the location where he had seen the suspect drop the handgun. (See Fact No. 4, supra) A loaded handgun was found right next to the corner of the house. (Id.) Officer Catron attempted to identify the suspect at the scene, but the suspect would only reply, "I'm a felon, I'm a felon." (See Fact No. 6, supra) After the suspect was taken to police headquarters, he was fingerprinted and identified as Willix Walker. (Id.)

4

Reasonable suspicion entails some minimal level of objective justification for making a stop–that is, something more than a suspicion or hunch. See United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Delaney, 52 F.3d 182, 187 (8th Cir.), cert. denied, 516 U.S. 878 (1995). Based on the facts known to the officers at the time they detained defendant Walker, the Court concludes that the officers had a reasonable, articulable suspicion that criminal activity was afoot and that the officers were justified in conducting an investigative stop of him. The officers were not acting on a mere hunch. Defendant, as a passenger in a vehicle that had been involved in several traffic violations and then eluded police, might have information that would help the police in apprehending the driver of the vehicle. Further, while eluding the police on foot, defendant was observed disposing of a handgun. Thus, the first part of the Terry inquiry shows that the investigative stop was justified under the circumstances.

As to the second part of the Terry inquiry, "a police officer may take steps reasonably necessary to protect his or her personal safety and the safety of others and to maintain the status quo of a situation while verifying or dispelling suspicion in a short period of time." United States v. Seelye, 815 F.2d 48, 50 (8th Cir. 1987)(citing United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.), cert. denied, 474 U.S. 837 (1985)). Here, the officers' actions in stopping defendant at gunpoint were reasonably necessary to protect the officers' personal safety and to maintain the status quo so that the officers could determine whether defendant was engaged in criminal activity.

Upon being detained, defendant Walker informed the officers that he was a felon. Given the fact that Officer Catron observed Walker dispose of a handgun while running from Catron, probable cause existed to arrest Walker. Upon searching the suspect incident to arrest, the ammunition, sunglasses and ski mask were recovered. (See Fact No. 5, supra) The seizure of the ammunition,

5

sunglasses and ski mask from defendant's person does not violate the Fourth Amendment. See United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004)("if an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets").

The seizure of the handgun also does not violate the Fourth Amendment. At the point that defendant disposed of the handgun, he was not yet seized. See California v. Hodari D., 499 U.S. 621, 629 (1991)(holding that a suspect who fled a police car was not seized when the police gave chase or shouted to him to stop, but only when the police actually captured and restrained him). A warrantless search and seizure of abandoned property does not implicate the Fourth Amendment because any expectation of privacy in the item is forfeited upon its abandonment. See United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997), cert. denied, 522 U.S. 1061 (1998); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994), cert. denied, 513 U.S. 1099 (1995). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers. See Tugwell, 125 F.3d at 602. Given Officer Catron's observation of the suspect disposing of the handgun, an abandonment clearly occurred.

Finally, defendant's argument that the police in the helicopter could not have provided a sufficient description to warrant the officers on the ground to stop him must also fail. Officer Catron testified that not more than a minute or two passed between the time the helicopter officer notified the ground officers that the passenger had fled from the car, the ground officers moved into the area given by the helicopter officer and Officer Catron observed a suspect matching the description that the helicopter officer had given running between houses. (See Fact No. 3, supra) Officer Catron testified that, in his mind, there was no question that the suspect he observed running was the

6

passenger from the vehicle. (Id.) Officer Newell parked the patrol vehicle and Officer Catron exited the vehicle and ordered the suspect to stop. (Id.) The suspect fled. (Id.) Officer Catron gave foot pursuit between houses and over a fence. (Id.) Officer Catron continuously gave the suspect verbal orders to stop, but the suspect would not stop. (Id.) The ground officers were justified in acting on the information provided to them by the helicopter officer.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Walker's Motion to Suppress (doc #18).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

7

Case 4:05-cr-00406-DW   Document 26   Filed 02/14/06   Page 7 of 7